United States District Court
Southern District of Texas
**ENTERED**
February 15, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

James Lee Verdine,     §
  Petitioner,      §
         §
v.          §    Civil Action H-22-600
         §
Bobby Lumpkin,      §
Director, Texas Department   §
of Criminal Justice, Correctional   §
Institutions Division,     §
  Respondent.      §

## Report and Recommendation

James Lee Verdine filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his Texas state-court conviction for aggravated robbery. ECF No. 2. The respondent, Bobby Lumpkin, has moved for summary judgment. ECF No. 19. Verdine has filed a response. ECF No. 24. The court recommends that the respondent's motion for summary judgment be granted and Verdine's petition be dismissed.

### 1. Procedural Background

Verdine is in custody of the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ) as the result of a state-court conviction in the 232nd District Court of Harris County, Texas (Cause No. 1605457). ECF No. 20-1 at 183-84. Verdine was charged with aggravated robbery with a deadly weapon, enhanced by two prior consecutive felony convictions. *Id.* at 8. Following a trial, a jury found Verdine guilty as charged and, on September 26, 2018, sentenced him to a 60-year prison term. *Id.* at 183.

The First Court of Appeals of Texas affirmed Verdine's conviction. *Verdine v. State*, No. 01-18-00884-CR, 2020 WL 1584468

(Tex. App.—Houston [1st Dist.] April 2, 2020, pet. ref'd). The Texas Court of Criminal Appeals subsequently refused Verdine's petition for discretionary review. *Verdine v. State*, PD-0315-20 (Tex. Crim. App. Oct. 28, 2020).

In September 2021, Verdine filed a state application for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure, collaterally challenging his conviction. *Ex parte Verdine*, Application No. WR-93,268-01. On November 17, 2021, the Court of Criminal Appeals denied the application, without a written order or hearing, on the findings of the trial court and the court's independent review of the record. *Id.*

Verdine then filed the instant federal petition for a writ of habeas corpus. ECF No. 2. He asserts that he is entitled to relief because his Sixth Amendment right to confrontation was violated and the resulting violation was harmful. *Id.* The respondent argues that Verdine's petition should be dismissed with prejudice because his claims are without merit. ECF No. 19.

*2. Factual Background*

The statement of facts is taken from the Texas Court of Appeals opinion affirming Verdine's conviction.

> Zone D'Erotica was staffed by only one employee one February evening, when a man with a gun met the sole employee near the entrance, pointed a gun at her and led her to the cash register. The robber stole money from the cash register and fled on foot. The business's surveillance camera captured a few seconds of the events, as the two moved from the store entrance deeper into the building. The store employee called 9-1-1 after the robbery. She stated that the business had been robbed about five minutes earlier, she was the only employee there at the time, and the robber fled on foot toward an apartment complex nearby. She described the robber's general appearance to the operator.

> Officer S. Fernandez was patrolling the area. Within minutes, he saw James Verdine on foot 150 feet from Zone D'Erotica.

Verdine was sweaty, which indicated to Fernandez that he had been running. Fernandez brought Verdine back to the store for the employee to identify; the employee could not identify him.

Sergeant C. Malveaux investigated the robbery. He interviewed the store employee, watched the surveillance video he had asked the store manager to download, and interviewed Verdine, who remained a suspect. According to Malveaux, Verdine's physical appearance during the interview was very similar to the physical appearance of the man in the surveillance video. Malveaux noted that both wore the same shoes.

The store employee did not appear at trial to testify. Her 9-1-1 call was played for the jury over Verdine's objection that admitting the evidence violated his constitutional right to confront his accuser. The surveillance video recording was also played over Verdine's objection that it had not been adequately authenticated.

The jury convicted Verdine of aggravated robbery. After receiving enhancement evidence of earlier convictions, the jury selected a punishment of 60 years' confinement. The trial court entered a judgment of guilty and sentenced Verdine to 60 years' confinement.

*Verdine*, 2020 WL 1584468, at *1.

### 3. *The Summary-Judgment Standard*

Summary judgment is proper when the record shows no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In ordinary civil cases, a district court considering a motion for summary judgment must construe disputed facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary

judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000); *Anderson*, 477 U.S. at 254. The court applies general summary judgment standards to the extent they do not conflict with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) ("[Rule 56] applies only to the extent that it does not conflict with the habeas rules."), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

Verdine is representing himself. Self-represented habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings lawyers file. *See Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988). The court broadly interprets Verdine's state and federal habeas petitions. *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

### 4. *Standard of Review under 28 U.S.C. § 2254(d)*

Under AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular

case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this court considers whether the application was objectively unreasonable. *Id.* "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.* at 102–03 (emphasis added; internal citations omitted).

AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31. This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

*5. Discussion*

In his sole ground for relief, Verdine asserts that he was convicted in violation of the Confrontation Clause and the violation was harmful. The respondent contends that Verdine fails to demonstrate that the state court's denial of his claim was unreasonable.

The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, which encompasses a defendant's rights under the Confrontation Clause to rebut the State's evidence through cross-examination. *Kittelson v. Dretke*, 426 F.3d 306, 318-19 (5th Cir. 2005) (citations omitted). The right to cross-examination includes the opportunity to show that a witness is biased or that the testimony is unbelievable or exaggerated. *Id.* at 319 (citation omitted). In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause barred the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." The Court later clarified that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006) (footnote omitted).

Before a federal court may grant habeas relief on the basis of a violation of the Confrontation Clause, the court must apply the *Brecht* harmless-error standard. *Kittelson*, 426 F.3d at 319-20. Under the *Brecht* standard, the petitioner must establish that the violation of the Confrontation Clause had a "substantial and injurious effect or

influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (quotation marks omitted). It is not enough to show only that there is a "reasonable possibility" that the Confrontation Clause violation contributed to the verdict. *Id.* at 637.

Here, Verdine argues the State violated his rights under the Confrontation Clause by introducing a 9-1-1 recording without giving him an opportunity to cross-examine the store employee who made the call. The state appellate court addressed this claim and agreed that the trial court erred by admitting the recording because it was testimonial in nature. *Verdine*, 2020 WL 1584468, at *6. The state appellate court also concluded, however, that admission of the recording was harmless error. *Id.* at *7–8. Because the Texas Court of Criminal Appeals denied relief without written order, this court considers the intermediate appellate court's decision to be "the last reasoned opinion" on Verdine's claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991) (federal courts "look through" an unexplained state-court denial to evaluate the last reasoned state-court decision).

The parties do not dispute the appellate court's conclusion that the 9-1-1 call was testimonial, and the court assumes for the sake of argument that it is. The dispute in this case is whether the appellate court's harmless error analysis was unreasonable.

The court of appeals reviewed the constitutional error "under the standard specified in Rule 44.2(a) of the Texas Rules of Appellate Procedure." *Verdine*, 2020 WL 1584468, at *8 (citing *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) and Tex. R. App. P. 44.2(a)). The court of appeals explained that "Constitutional error requires reversal of the judgment 'unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.'" *Id.* In its harmless error analysis, the court considered several factors, including: 1) how important was the out-of-court statement to the State's case; 2) whether the out-of-court statement was

cumulative of other evidence; 3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and 4) the overall strength of the State's case. *Verdine*, 2020 WL 1584468, at *6 (citing *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007)). The court explained "we must ask whether there is a reasonable possibility that the error moved the jury from a state of non-persuasion to one of persuasion on a particular issue." *Id.* The court concluded "Ultimately, we must be satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction to conclude that the error was harmless and affirm." *Id.*

The court of appeals found that the 9-1-1 call merely corroborated other evidence in the state's case and was thus cumulative. *Verdine*, 2020 WL 1584468, at *7. The court noted that the responding officer testified he received a dispatch call and, within minutes, encountered Verdine, on foot, only 150 feet from the store. *Id.* Because Verdine was sweaty on a February evening, the officer concluded that Verdine had been running. *Id.* The same officer testified that he found money wadded up in Verdine's pants pocket. *Id.* The court of appeals further noted that another investigating officer testified that he watched the store's surveillance video and interviewed Verdine. *Id.* According to the second officer, the robber shown in the store's surveillance video matched Verdine's appearance during the interview, including matching physical characteristics and shoes. *Id.*

The court of appeals found that the 9-1-1 call merely described the robbery and the robber and was cumulative of the testimony from the two officers and the video evidence. *Verdine*, 2020 WL 1584468, at *7. The court concluded that "Because of its cumulative character, we conclude there is not a reasonable possibility the trial court's admission of the 9-1-1 recording moved the jury from a state of non-persuasion to one of persuasion on the issue of Verdine's guilt or punishment." *Id.*

The court agrees with the court of appeals' analysis. There are no facts or conclusions stated in the recording that were not shown in the video or observed by the officers. Verdine has not shown that the state court applied an incorrect legal standard or that its assessment of the evidence was inaccurate. An independent review of the evidence confirms that the State's case against Verdine was strong even without the 9-1-1 recording. Based on this record, Verdine does not show that his conviction was tainted by constitutional error that had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (*Brecht* standard of harmless error applies whether or not the state appellate court conducted a harmlessness review). More importantly, Verdine does not demonstrate that the state court's conclusion was unreasonable or wrong. Accordingly, the court concludes that Verdine is not entitled to relief.

## 6. Conclusion

The court recommends that the respondent's motion for summary judgment be granted and that Verdine's petition for writ of habeas corpus be dismissed with prejudice.

The parties have fourteen days from service of this report and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of

factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on February 15, 2023.

_____
Peter Bray
United States Magistrate Judge